UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

GENERAL MOTORS, LLC,

        Plaintiff,

vs.

TOM PETTY,

        Defendants.

_____/

Case No. 16-12291

Hon. _____

**COMPLAINT FOR TRADEMARK INFRINGEMENT, COUNTERFEITING, AND UNFAIR COMPETITION**

Plaintiff General Motors, LLC ("GM"), by its attorneys Honigman Miller Schwartz and Cohn LLP, for its Complaint against Defendant Tom Petty ("Petty"), says:

## PARTIES

1.      Plaintiff GM is a Delaware limited liability company with its principal office at 300 Renaissance Center, Detroit Michigan 48265-3000.

2.      Defendant Petty is an individual residing and doing business in Brighton, Michigan.

## JURISDICTION AND VENUE

3.      GM incorporates herein by reference each of the preceding paragraphs.

4.      This Court has subject matter jurisdiction under 28 U.S.C. §§1331 & 1338 in that this case arises under the Trademark Law of the United States, 15

U.S.C. §§1051, *et. seq*. Jurisdiction over the additional state-law claims exists under 28 U.S.C. §1367.

5.     Petty is believed to reside and do business in this District, and a substantial portion of the activity about which GM complains has taken place in this District. Therefore, this Court has personal jurisdiction over Petty, and venue is proper in this District pursuant to 28 U.S.C. §1391.

## COMMON ALLEGATIONS

### GM's Well-Known and Valuable Trademarks

6.     GM incorporates herein by reference each of the preceding paragraphs.

7.     GM produces millions of automotive vehicles each year, and sells and services these vehicles through brands that include Buick, Cadillac, Chevrolet, and GMC.  Genuine GM Parts and accessories are sold under the GM and GM Goodwrench brands, among others, through GM Customer Care and Aftersales, which supplies GM dealerships and distributors throughout the United States. Through official licensed dealerships and other GM-authorized service providers, GM offers a full range of automotive repair and maintenance services to owners of GM vehicles across the United States.

2

8.      GM and its licensees use scores of GM trademarks in the marketplace including the ACDELCO, BUICK, CADILLAC, CAMARO, CHEVELLE, CHEVROLET, CORVETTE, FIREBIRD, GMC, GTO, HUMMER, OK USED CARS, OLDSMOBILE, PONTIAC, SATURN, STINGRAY, and THE JUDGE word marks and associated logos; as well as the model names, trim level designations, logos, and body designs of vehicles that are or were sold by GM and General Motors Corporation, their subsidiaries, affiliates and licensees ("GM Trademarks").

9.      GM takes great care to assure the quality and consistency of the goods and services offered at each of its company-owned and authorized locations. In addition, licensees are required to follow GM guidelines for the use of its trademarks and service marks.

10.      For these and other reasons, the GM Trademarks enjoy a high degree of recognition and goodwill throughout the United States and the world.

11.      GM has established valuable and enforceable trademark and service mark rights in the GM Trademarks through bona fide use of the mark in commerce and related advertising.

12.      In recognition of the goodwill and distinctiveness inherent in GM's family of marks, the U.S. Patent and Trademark Office (USPTO) has issued to GM

3

numerous U.S. Trademark and Service Mark Registrations for the GM Trademarks

including, but not limited to, the following:

| TRADEMARK | REG NO. | GOODS/SERVICES |
|---|---|---|
| BUICK | 2,625,102 | Metal key chains, metal key fobs, metal key rings, metal keys, license plates made of metal, non-luminous and non-mechanical metal signs, money clips made of metal, ornamental replicas of vehicles made of metal, parking signs made of metal, street signs made of metal in Class 6. |
| BUICK | 2,593,676 | Sunglasses, magnets, thermometers not for medical use, computer software for use in arcade games, hand held electronic games, computer games and computer screen savers, mouse pads, wrist rests, neon signs, calculators, and radios in Class 9. |
|  BUICK EMBLEM | 2,625,101 | Metal key chains, metal key fobs, metal key rings, metal keys, license plates made of metal, non-luminous and non-mechanical metal signs, money clips made of metal, ornamental replicas of vehicles made of metal, parking signs made of metal, street signs made of metal in Class 6. |
|  CADILLAC CREST AND WREATH | 2,779,457 | Metal key chains, metal key fobs, metal key rings, metal keys, license plates made of metal, non-luminous and non-mechanical metal signs, ornamental replicas of vehicles made of metal, non-luminous and non-mechanical parking signs made of metal, non-luminous and non-mechanical street signs made of metal in Class 6. |
|  CAMARO EMBLEM 2015 | 4,863,381 | Non-luminous and non-mechanical metal signs in Class 6. |
| CHEVROLET | 2,563,091 | Metal money clips, metal knobs, non-mechanical metal street signs, non-mechanical metal parking signs, non-mechanical tin signs, metal key rings, metal license plates in Class 6. |

4

| | | |
|---|---|---|
| <br>CHEVROLET EMBLEM | 2,779,456 | Metal banks, metal decorative boxes, ingots of common metal, metal key chains, metal key fobs, metal key rings, metal keys, license plates made of metal, non-luminous and non-mechanical metal signs, money clips made of metal, ornamental replicas of vehicles made of metal, non-luminous and non-mechanical parking signs made of metal, non-luminous and non-mechanical street signs made of metal, metal tool boxes in Class 6. |
| <br>CHEVROLET EMBLEM | 2,734,714 | Binoculars, calculators, photographic cameras, directional compasses, computer mouse pads, computer mouses, computer game software for use in arcade games, hand held electronic games and video games, computer screen saver software, electric signs, eyeglass cases, eyeglasses, computer and video game cartridges, video game interactive hand held remote controls for playing electronic games, hand held joy stick units for playing video games, graduated rulers, interactive video games of virtual reality comprised of computer software and hardware, decorative magnets, magnifying glasses, neon signs, prerecorded videotapes featuring information on automobiles, radio antennas, radios, sunglasses, tape measures, telephones, thermometers not for medical use, tire pressure gauges, video rewinders, yard sticks in Class 9. |
| <br>CHEVROLET EMBLEM | 2,563,092 | Metal money clips, metal knobs, non-mechanical metal street signs, non-mechanical metal parking signs, non-mechanical tin signs, metal key rings, metal license plates in Class 6. |
| CORVETTE | 2,463,898 | Metal money clips, metal gear shift knobs, non-mechanical metal street signs, non-mechanical metal parking signs, non-mechanical tin signs, metal key rings, metal license plates in Class 6. |
| <br>CORVETTE EMBLEM C6 | 3,739,089 | Sunglasses, sunglass cases, computer mouses, laptop carrying cases, CD cases, neon signs in Class 9. |
| <br>CORVETTE EMBLEM C7 | 4,719,036 | Non-luminous and non-mechanical metal signs in Class 6. |

5

21911786.1
21960535.1

| | | |
|---|---|---|
| GENUINE CHEVROLET | 2,678,108 | Computer mouse pads, neon signs, thermometers not for medical use in Class 9. |
| GMC | 2,449,301 | Sunglasses, magnets, thermometers not for medical use, antennaes, computer game software, telephones, mouse pads, computer peripherals, namely, wrist rests, neon signs, calculators and radios in Class 9. |
| OLDSMOBILE | 2,775,430 | Metal key chains, metal key fobs, metal key rings, license plates made of metal, non-luminous and non-mechanical metal signs, non-luminous and non-mechanical parking signs made of metal, non-luminous and non-mechanical street signs made of metal in Class 6. |
| PONTIAC | 2,659,488 | Metal key chains, metal key fobs, metal key rings, metal keys for locks, license plates made of metal, non-luminous and non-mechanical metal signs, non-luminous and non-mechanical parking signs, non-luminous and non-mechanical street signs in Class 6. Leather key chains in Class 18. Non-metal key chains, plastic key chains tags, key fobs not of metal, non-metal key rings, plastic key rings in Class 20. Miniature replicas of vehicles and toy vehicles in Class 28. |
| PONTIAC | 2,685,227 | Magnets, thermometers not for medical use, computer game software, mouse pads, neon signs, calculators in Class 9. |
|  PONTIAC EMBLEM | 2,635,330 | Metal piggy banks, metal key chains, metal key fobs, metal key rings, metal keys for locks, license plates made of metal, non-luminous and non-mechanical metal signs, non-luminous and non-mechanical metal parking signs, non-luminous and non-mechanical metal street signs, metal tool boxes and freestanding  in Class 6. Leather key chains in Class 18. Non-metal key chains, plastic key chain tags, key fobs not of metal, non-metal key rings, plastic key rings in Class 20. Miniature replicas of vehicles and toy vehicles in Class 28. |

21911786.1
21960535.1

| | | |
|---|---|---|
| PONTIAC EMBLEM | 2,555,084 | Magnets, thermometers not for medical use, computer software for use in arcade games, hand held electronic games, video games, computer games and computer screen savers, mouse pads, neon signs in Class 9. |
| STINGRAY EMBLEM | 4,597,292 | Non-luminous and non-mechanical metal signs in Class 6. |

13.     Many of the GM Trademarks are incontestable, including Registration Nos. 2,625,102; 2,593,676; 2,625,101; 2,779,457; 2,563,091; 2,779,456; 2,734,714; 2,563,092; 2,463,898; 3,739,089; 2,678,108; 2,449,301; 2,775,430; 2,659,488; 2,685,227; 2,635,330; and 2,555,084.

14.     Current TSDR records for certain GM Trademarks are attached as **Exhibit A**.

15.     The GM Trademarks embody GM's considerable goodwill, and are extremely valuable assets. As a result of the extensive sales, advertising, promotion, and overall use of these marks in commerce, these marks are strong and, indeed, famous.

**Defendant Operates a Neon Sign Business**
**That Brazenly Infringes the GM Trademarks**

16.     Petty does business, or has done business, both under his own name and one or more assumed names, including through the websites available at www.NeonGuyInMichigan.com,   www.VintageAdvertisingNeon.com,   and   the

7

21911786.1
21960535.1

eBay online storefront for Neon Guy in Michigan (the "Websites") and the name "Vintage Neon."

17.     Petty sells or has sold products in person through one or more trade shows.

18.     Among the products Petty sells or has sold are neon signs in the shape of, or that prominently incorporate, one or more of the GM Trademarks.

19.     Representative examples of the products Petty sells or has sold are attached as **Exhibit B**.

20.     Petty is not authorized by GM to sell neon signs in the shape of, or that prominently incorporate, any GM Trademark.

21.     Petty is not authorized by GM to sell any products in the shape of, or that prominently incorporate, any GM Trademark.

22.     The unauthorized commercial uses of the GM Trademarks by Petty convey to the general public the false and misleading impression that Petty and his products are affiliated with, approved by, or sponsored by GM.

23.     Petty's unauthorized use of the GM Trademarks makes it impossible for GM to control the nature and quality of products that Petty offers in connection with the GM Trademarks.

8

24.     Petty's unauthorized use of the GM Trademarks creates unfair competition for, and confusion with, businesses in the same market that are licensed by GM to use the GM Trademarks.

**GM's Attempts to End the Infringement,
and Petty's Display of Willfulness**

25.     After discovering Petty's activities, GM representatives conveyed to Petty on multiple occasions that he needed to respect GM's trademark rights and cease selling unauthorized products. Petty repeatedly promised, but failed, to comply.

26.     For example, after becoming aware of his unauthorized use, GM sent a correspondence to Petty on or about October 23, 2014.   In that correspondence, GM advised Petty that he was infringing on GM's trademark rights, and requested that he immediately cease selling neon signs and any other merchandise displaying the GM Trademarks.  See **Exhibit C**.

27.     After receiving GM's correspondence, Petty removed many of the neon signs previously displayed on his eBay storefront, but continued to sell unauthorized GM neon signs on the other Websites.  GM sent a follow-up email to Petty on or about November 11, 2014, requesting the removal of the unauthorized GM neon signs that remained on all Websites.  Petty responded to that email, intimating that he would comply with this request.  See **Exhibit D**.

9

28.     On or about January 6, 2015, Equity Management Inc. ("EMI"), a company that assists GM in managing its consumer merchandise trademark licensing program, also sent a letter to Petty advising him that his request for a GM licensing agreement had been denied.  Despite these correspondences, Mr. Petty continued to promote the sale of unauthorized GM neon signs on the Websites. See **Exhibit E**.

29.     On or about March 30, 2015, GM's outside counsel wrote to Petty, identifying still-ongoing infringements and requesting that they cease. Petty responded on or about April 2, 2015, again promising that he would comply with these requests by "the first of the month."  See **Exhibit F**.

30.     On or about May 21, 2015, GM's outside counsel wrote to Petty yet again, noting that while most of the signs had been removed, two unauthorized GM neon signs remained on display on www.NeonGuyInMichigan.com, as did the language "Some Chrysler and GM Signs Not listed But In Stock."  Counsel asked that the remaining signs and the language be removed, and warned that if these unauthorized uses were not removed, GM would consider it in bad faith, as Petty was by now well aware of GM's objections.  See **Exhibit G**.

31.     On information and belief, as of the date of this Complaint Petty has deactivated his Websites.

21911786.1
21960535.1

32.     However, Petty continues to sell infringing signs.

33.     In April 2016, Petty rented a booth at an outdoor automobile enthusiast show called Spring Carlisle under the assumed name "Vintage Neon." See **Exhibit H**.  At this event, Petty offered for sale several neon signs bearing GM Trademarks.  See **Exhibit I**.

34.     The substantial history of communication between GM and Petty, coupled with Petty's admitted misuse of the GM Trademarks, all reinforce the conclusion that Petty is willfully and wantonly infringing the GM Trademarks in order to capitalize on the goodwill inherent in those marks.

### Petty's Continued Infringement of the GM Trademarks Is Inflicting Irreparable Harm on GM

35.     Petty has knowingly, intentionally, and in willful disregard of GM's rights caused his infringing products to be distributed, publicly displayed, sold, and used in commerce in the United States.

36.     Petty's use of the GM Trademarks is not authorized by GM.  Neither Petty nor any of his agents, servants, employees, or clients have been licensed by, or otherwise received permission from GM or any agent, servant or employee of GM, to create or use the infringing products.

37.     Petty's intentional and wrongful acts have caused and are causing great injury to GM, which damage cannot be accurately computed and, unless this

Court restrains Petty from the further commission of said acts, GM will suffer irreparable injury with respect to which GM is without any adequate remedy at law.

## COUNT I – TRADEMARK INFRINGEMENT

38.     GM incorporates herein by reference each of the preceding paragraphs.

39.     GM possesses valid and enforceable rights in the GM Trademarks in connection with the goods at issue in this case, and has possessed such rights at all times material hereto.

40.     Petty has no right or authority to distribute, sell, or otherwise offer in commerce any products bearing any GM Trademark.

41.     Nevertheless, Petty has continued to sell and otherwise offer in commerce goods bearing and in connection with the GM Trademarks, and has made clear his intention to continue doing so, despite GM's repeated instruction to cease and desist.

42.     Petty marketed his infringing goods in the same marketing channels and to the same customer base as GM and its authorized licensees.

21911786.1
21960535.1

43.     Petty's actions have caused, and will continue to cause, a likelihood of confusion among relevant purchasers as to whether his infringing goods are authorized by or affiliated with GM.

44.     Petty's actions constitute infringement of the GM Trademarks under 15 U.S.C. §1114 and other applicable state and common laws.

45.     Petty's infringing activity has caused, and will continue to cause, irreparable harm to GM, including by injuring the goodwill associated with the GM Trademarks, by reducing GM's ability to control the use of the GM Trademarks, by interfering with GM's ability to expand its legitimately licensed operations, and by causing a likelihood of confusion among GM's potential customers.

46.     At all material times, Petty's infringing activity has been willful, knowing, and intentional.

## COUNT II – UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN

47.     GM incorporates herein by reference each of the preceding paragraphs.

48.     By virtue of the actions described above, Petty has unfairly competed with GM, and has caused, and is causing, a likelihood of confusion, mistake, or deception as to the affiliation, connection, or association of Petty with

13

GM, or as to the origin, sponsorship, or approval by GM of Petty's goods or commercial activities, all in violation of 15 U.S.C. §1125 and other applicable state and common laws.

49.     By virtue of the actions described above, Petty has, in commercial advertising, misrepresented the nature, characteristics, or qualities of Petty's goods or commercial activities, all in violation of 15 U.S.C. §1125 and other applicable state and common laws.

50.     At all material times, Petty's actions have been willful, knowing and intentional.

51.     Said actions have caused injury to GM, and Petty is liable to GM for the same.

## COUNT III – TRADEMARK COUNTERFEITING

52.     GM incorporates herein by reference each of the preceding paragraphs.

53.     Because Petty's infringing goods exactly duplicate the GM Trademarks, these uses meet the definition of "counterfeit mark" given in 15 U.S.C. §1116(d)(1)(B).

14

54.     Petty is liable for the remedies given by the Lanham Act, 15 U.S.C. §§1101 *et seq.*, for use of counterfeit marks in commerce, including but not limited to injunctive relief, treble damages, attorneys' fees, and statutory damages.

55.     At all material times, Petty's use of the counterfeit marks has been willful, knowing, and intentional.

## <u>PRAYER FOR RELIEF</u>

WHEREFORE, GM respectfully requests that this Court grant it the following relief:

A.     An injunction preliminarily and permanently enjoining Petty and his employees, agents, partners, officers, directors, shareholders, related companies, affiliates, distributors, dealers, and all persons in active concert or participation with any of them:

1.     From making any use whatsoever (including reproduction, derivation, distribution, display, performance, sale, or other use in commerce) of the GM Trademarks;

2.     From representing by any means whatsoever, directly or indirectly, that Petty, any goods or services offered by Petty, or any activities undertaken by Petty, are associated or connected in any way with GM.

B.     An injunction preliminarily and permanently directing Petty to:

15

1.     Immediately remove all advertising materials referencing, marketing, or otherwise advertising for sale goods in connection with the GM Trademarks;

2.     Immediately cease all use of the GM Trademarks or any other confusingly similar names or terms;

3.     Deliver to GM or its designee for confiscation and/or destruction, within 10 days, all infringing goods;

4.     Deliver to GM or its designee for confiscation and/or destruction, within 10 days, all tooling, molds, dies, and the like for manufacturing any goods bearing, or in the shape of, any GM Trademark;

5.     Within 10 days, to produce to GM's attorneys all of Petty's books, records, and accounts covering all sales made from Petty's business, and all available details of all purchases by Petty of GM-branded materials;

6.     File with this Court and serve on GM's attorneys, thirty (30) days after the date of entry of any injunction, a report in writing and under oath setting forth in detail the manner and form in which Petty has complied with the injunction;

C.     An Order:

21911786.1
21960535.1

1.     Requiring Petty to pay GM such statutory damages as specified in 17 U.S.C. §1117(c), namely, not more than Two Million Dollars ($2,000,000) nor less than One Thousand Dollars ($1,000) per counterfeit mark per type of goods sold, offered for sale, or distributed, as the Court considers just;

2.     Requiring Petty to account for any and all profits arising from the foregoing acts of infringement, false designation of origin, passing off, misrepresentation, unfair competition, and misappropriation, and trebling such profits for payment to GM in accordance with 15 U.S.C. §1117 and other applicable laws;

3.     Requiring Petty to pay GM compensatory damages in an amount as yet undetermined caused by the foregoing acts, and trebling such payment to GM in accordance with 15 U.S.C. § 1117 and other applicable laws;

4.     Requiring Petty to pay GM punitive damages in an amount as yet undetermined;

5.     Requiring Petty to pay GM's costs and attorneys' fees in this action pursuant to 15 U.S.C. § 1117;

6.     Requiring Petty to pay GM prejudgment interest on each of the foregoing monetary awards; and

D.     Any further relief the Court deems just and warranted.

21911786.1
21960535.1

Respectfully submitted,

Date: June 21, 2016                    By: /Brian D. Wassom/
                                        Anessa O. Kramer
                                        Brian D. Wassom
                                        Honigman Miller Schwartz and Cohn LLP
                                        39400 Woodward Ave., Ste. 101
                                        Phone: (248) 566-8490
                                        Fax: (248) 566-8491
                                        litdocketing@honigman.com
                                        akramer@honigman.com
                                        bwassom@honigman.com

18